COPY

1  Alan E. Friedman (SBN 47839)
   aefriedman@jonesday.com
2  Daniel J. McLoon  (SBN 109598)
   djmcloon@jonesday.com
3  Orian J. Lee (SBN 247479)
   olee@jonesday.com
4  JONES DAY
   555 South Flower Street, Fiftieth Floor
5  Los Angeles, CA  90071-2300
   Telephone:   (213) 489-3939
6  Facsimile:   (213) 243-2539

7  Attorneys for Plaintiff
   PRICEGRABBER.COM, INC.

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11

12  PRICEGRABBER.COM, INC.,          Case No. CV 10-09580 SJO(MANx)
    a Delaware corporation,
13                                   **THIRD AMENDED COMPLAINT
                 Plaintiff,          FOR BREACH OF CONTRACT**
14
         v.                          **DEMAND FOR JURY TRIAL**
15
    UNISTER GMBH, a Germany
16  corporation,

17               Defendant.

18

19

20

21

22

23

24

25

26

27

28

Plaintiff PriceGrabber.com, Inc. ("PriceGrabber") alleges:

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because diversity of citizenship exists between PriceGrabber and Defendant Unister GmbH ("Unister") and the amount in controversy exceeds $75,000.

2.      This Court has personal jurisdiction over Unister, which has expressly consented in writing to submit to the jurisdiction of this Court.

3.      Venue is proper in this Court under 28 U.S.C. § 1391(d), and because Unister has expressly waived in writing any venue objection to an action brought in this Court.

## THE PARTIES

4.      PriceGrabber is a corporation organized and existing under the laws of the State of Delaware, which has its principal place of business within this judicial district at 5150 Goldleaf Circle, Los Angeles, California  90056.

5.      PriceGrabber is informed and believes and on that basis alleges that Unister is a corporation organized under the laws of Germany, which has its principal place of business at Barfussgässchen 11, 04109 Leipzig Germany.

## FACTUAL BACKGROUND

6.      PriceGrabber provides and maintains a shopping comparison web site, http://www.pricegrabber.com ("PriceGrabber Web Site").  PriceGrabber contracts with merchants ("Merchants") to list and advertise Merchants' goods and to provide links to Merchants' web sites ("Merchant Web Sites") through the PriceGrabber Web Site and other PriceGrabber-affiliated web sites ("PriceGrabber Links") (collectively, the "PriceGrabber Content").  Internet users can "click-thru" the PriceGrabber Links to access Merchant Web Sites (each instance a "Click-thru").

7.      PriceGrabber earns revenue from Merchants based on the number of Click-thrus Merchant Web Sites receive from PriceGrabber Links, or based on a

1    percentage of sales generated for Merchants resulting from Click-thrus from

2    PriceGrabber Links.

3        8.    On or about March 23, 2009, PriceGrabber and Unister entered into a

4    certain written API Co-Brand Agreement whereby PriceGrabber granted Unister a

5    nonexclusive, nontransferable license to display and include PriceGrabber Content,

6    including PriceGrabber Links, on http://www.cheap-hit.com. On or about May 26,

7    2009, PriceGrabber and Unister amended the agreement to extend PriceGrabber's

8    license to both http://www.cheap-hit.com and http://www.best-price.com, another

9    Unister-operated web site (together, the "Unister Web Sites"). Under the terms of

10    the license, Unister is not authorized to display or include any PriceGrabber

11    Content on any website other than the Unister Web Sites. The API Co-Brand

12    Agreement, as amended, is hereinafter referred to as the "Agreement," is attached

13    hereto as Exhibit A and is incorporated by reference as though fully set forth herein.

14        9.    At the time of the Agreement, the Unister Web Sites contained

15    commercially viable content distinct and unique from the PriceGrabber Content,

16    and did not contain content that competed in any way with the PriceGrabber

17    Content or with any PriceGrabber business except insofar as Unister offered coupon

18    and discount content to its customers.

19        10.    Pursuant to the Agreement, Unister agreed to display and include

20    PriceGrabber Content for online comparison shopping content on the Unister Web

21    Sites to the exclusion of any other online comparison shopping content provided by

22    anyone other than PriceGrabber. Section 1.2 of the Agreement provides:

23          **1.2 Exclusivity.** [Unister] agrees that its relationship
           with PriceGrabber related to online comparison shopping

24          for the [Unister Web Sites], as defined above, is exclusive
           in favor of PriceGrabber (whether or not involving co-

25          branding), *and* [Unister] *agrees not to develop, or enter*
           *into other agreements or relationships for services and*

26          *content that are similar in nature to those provided by*
           *PriceGrabber, throughout the Term* (as defined in Section

27          6.1 [36 months from March 23, 2009, plus automatic one-
           year renewals]).

28

1    (Emphasis added.)

2         11.    In section 4 of the Agreement, PriceGrabber agreed to pay Unister a

3    share of the revenue PriceGrabber earned from Click-thrus from PriceGrabber

4    Links displayed on the Unister Web Sites.

5         12.    Between October 1, 2009 and September 30, 2010, the average gross

6    revenue earned by PriceGrabber as a result of Click-thrus from the Unister Web

7    Sites exceeded $250,000 per month.

8         13.    PriceGrabber is informed and believes and on that basis alleges that in

9    or about early October 2010, Unister breached the Agreement by removing

10   PriceGrabber Content, including PriceGrabber Links, from the Unister Web Sites,

11   and by displaying and including online comparison shopping content provided by

12   Deal Time ("Deal Time Content"), an entity not affiliated with PriceGrabber, on the

13   Unister Web Sites.  The Deal Time Content was and is similar in nature to the

14   PriceGrabber Content.  PriceGrabber is informed and believes and on that basis

15   alleges that Unister continues to display and to include Deal Time Content on the

16   Unister Web Sites.

17        14.    By letter dated October 11, 2010, PriceGrabber notified Unister that

18   Unister's display and inclusion of Deal Time Content on the Unister Web Sites

19   constituted a material breach of section 1.2 of the Agreement.  Notwithstanding this

20   notice, PriceGrabber is informed and believes and on that basis alleges that Unister

21   has continued to display and to include Deal Time Content on the Unister Web

22   Sites.

23        15.    PriceGrabber is informed and believes and on that basis alleges that

24   Unister has breached the Agreement by displaying and including online comparison

25   shopping content, provided by entities not affiliated with PriceGrabber, on the

26   Unister Web Sites on other occasions as well.

27        16.    PriceGrabber is informed and believes and on that basis alleges that as

28   a direct and proximate result of the above-alleged breaches by Unister of the

- 3 -

1   Agreement, PriceGrabber has sustained damages because substantially fewer Click-
2   thrus of PriceGrabber Links have been recorded from the Unister Web Sites, which
3   has resulted in a substantial loss of revenue for PriceGrabber.

4        17.    In or around December 2010, PriceGrabber became aware that Unister
5   had also breached the Agreement by displaying and including PriceGrabber
6   Content on a website other than the Unister Web Sites.

7        18.    By letter dated January 12, 2011, PriceGrabber notified Unister that
8   Unister's display and inclusion of PriceGrabber Content on a website other than the
9   Unister Web Sites constituted, among other things, a breach of the Agreement, and
10   a violation of federal copyright law.  Notwithstanding this notice, to which Unister
11   has never responded, PriceGrabber is informed and believes and on that basis
12   alleges that Unister has continued to display and include PriceGrabber Content on
13   websites other than the Unister Web Sites.

14        19.    Section 8.6 of the Agreement states:

15       **8.6  Attorney fees and Court Costs.**  The prevailing
16   party in any legal action brought by one party against the
     other and arising out of this Agreement shall be entitled,
17   in addition to any other rights and remedies it may have,
     to reimbursement for its expenses, including court costs
18   and reasonable attorneys' fees.

19        20.    Section 8.4 of the Agreement provides that the "Agreement shall be
20   governed by, and construed in accordance with, the laws of the State of California,
21   excluding its provisions on conflicts of laws."

22        21.    In section 8.5 of the Agreement, Unister and PriceGrabber agreed to
23   "submit to the jurisdiction of, and waive any venue objection to, the United States
24   District Court for the Central District of California and the Superior Courts located
25   in Los Angeles County, California, in any litigation arising out of this Agreement."

26
27
28

# FIRST CLAIM FOR RELIEF

## BREACH OF CONTRACT

22.     PriceGrabber incorporates by reference the allegations contained in paragraphs 1-21, above.

23.     Unister has intentionally and willfully breached, and continues intentionally and willfully to breach, the express provisions of the Agreement by removing PriceGrabber Content from the Unister Web Sites and by displaying and including Deal Time Content in its stead.

24.     Unister has also intentionally and willfully breached the express provisions of the Agreement by displaying and including online comparison shopping content, provided by entities not affiliated with PriceGrabber, on the Unister Web Sites on other occasions as well.

25.     Unister has also intentionally and willfully breached, and PriceGrabber is informed and believes and on that basis alleges that Unister continues intentionally and willfully to breach, the express provisions of the Agreement by displaying and including PriceGrabber Content on websites other than the Unister Websites.

26.     PriceGrabber has performed all of the terms and conditions on its part to be performed under the Agreement.

27.     As a direct and proximate result of Unister's breaches of the Agreement, PriceGrabber has been damaged in an amount yet to be ascertained.

## PRAYER FOR RELIEF

**WHEREFORE**, PriceGrabber prays for the following relief against Unister:

A.     ON THE FIRST CLAIM FOR RELIEF;

    1.     For compensatory and consequential damages, including without limitation lost profits, in an amount to be determined at trial;

2.  For orders specifically enforcing the Agreement against Unister by preliminarily and permanently enjoining Unister from violating section 1.2 of the Agreement; and by preliminarily and permanently enjoining Unister from displaying any PriceGrabber Content on any websites other than the Unister Web Sites.

B.  For attorneys' fees;

C.  For costs of suit; and

D.  For such other and further legal and equitable relief as this Court deems proper.

Dated:  April 13, 2012                JONES DAY

                                      By
                                         Alan E. Friedman

                                      Attorneys for Plaintiff
                                      PRICEGRABBER.COM, INC.

1

**DEMAND FOR JURY TRIAL**

2        Pursuant to Federal Rule of Civil Procedure 38(b) and Local Rule 38-1,

3  PriceGrabber hereby demands a jury trial of all issues triable by jury in this action.

4

5  Dated:  April 13, 2012                    JONES DAY

6

7                                  By _____

8                                  Alan E. Friedman

9                                  Attorneys for Plaintiff
PRICEGRABBER.COM, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A



# API CO-BRAND AGREEMENT

This **AGREEMENT** is made as of this date of March 23rd, 2009 (the "Effective Date"), by and between PriceGrabber.com Inc., a Delaware corporation, ("PriceGrabber") with offices at 5150 Goldleaf Circle, Los Angeles, CA 90056, and Unister GmbH ("Company"), a Germany Corporation with offices at barfußgäßchen 11, 04109 leipzig Germany and tax ID DE 223921247.

**Whereas,** PriceGrabber provides and maintains a shopping comparison web site (URL: www.pricegrabber.com) and makes available to Internet users certain content, resources, archives, indices, software, catalogs and collections of information, (collectively referred to herein as the "Content").

**Whereas,** Company provides and maintains one or more web sites containing commercially viable content that is distinct and unique from the Content, and does not contain content that competes in any way with the Content or any PriceGrabber business except insofar as Company offers coupon and discount content to its customers.

**Whereas,** the parties intend to allow Company to host, reproduce and display a portion of the Content on the Company Websites (as defined below).

**Definitions** Capitalized terms shall have the meaning set forth below or where they first appear in this Agreement:

**"Adjusted Gross Revenue"** means Gross Revenue less ten percent (10%) for bad debt, credit card fees, taxes (excluding income tax) and co-branding, hosting, and bandwidth costs.

**"Affiliate"** means with respect to a party hereto, any Entity controlling, controlled by, or under common control with such party, or any other Entity in a "control" relationship with such party, where "control" means the power to direct the management and policies of the company in question (whether party or other Entity), whether through the ownership of voting securities, by contract, or otherwise.

**"API"** has the meaning set forth in Section 2.1.

**"Click-thru"** means the following: when a User visits any of the Co-branded Pages and then points and clicks on one of the Merchants displayed thereon and is linked to any page on that Merchant's site, but expressly excluding click-thrus to web pages that are unavailable to the User.

**"Click-thru Conversion Rate"** means the percentage rate of the number of sales compared to the number of Click-thrus from Co-brand Pages to Merchants' Web Site(s).  For example, if a Co-brand Page has one hundred (100) Click-thrus and one (1) sale as a result, the Click-thru Conversion Rate would be one percent (1%).

  **"Co-branded Pages"** means each and every page on the Company Web Sites that contains Content.

  **"Company Web Sites"** means the following Web Site: http://www.cheap-hit.com.

  **"Content"** has the meaning set forth in the first whereas clause, above.

  **"Entity"** means any natural person, corporation, partnership, Limited Liability Company or other entity.

**"Gross Revenue"** means the sum of payments earned by PriceGrabber from Merchants based on either (i) arrangements whereby PriceGrabber is paid per Click-thru to Merchants' Web Sites; or (ii) arrangements whereby PriceGrabber is paid based on a percentage of sales generated for Merchants as a result of Click-thrus.

**"Intellectual Property Rights"** means any patent, copyright, trade secret rights, moral rights and other intellectual property or proprietary rights, as well as rights in Trademarks, and other distinctive brand features, arising under the laws of any jurisdiction.

V032203

EXHIBIT A
8

30/03/2009 18:49 +49-00-0000000000 S. 02/14

"**Link Back**" means a URL link(s) consisting of a specified location and text, as determined by PriceGrabber which links from Company Web Site to the PriceGrabber Web Site.

"**Merchant**" means any Entity that lists products or services for display on the PriceGrabber Web Sites under the terms of PriceGrabber's Merchant Agreement.

"**Merchant Agreement**" means the agreement captioned by PriceGrabber as "Referral Marketing Agreement" or an equivalent agreement entered into by sellers of products or services (or their agents) to list products or services for display on the PriceGrabber Web Sites.

"**PriceGrabber Web Sites**" means, collectively, the Web Site with the primary home page located at http://www.PriceGrabber.com; and any other Web Sites maintained by or on behalf of PriceGrabber and/or its Affiliates.

"**Trademarks**" means any trademarks, service marks, trade dress, trade names, corporate names, proprietary logos or other business or service identifiers.

"**User**" shall mean any person who visits the PriceGrabber Web Sites or the Co-branded Pages.

"**Web Site**" means any point of presence indicated by a URL maintained on the Internet or on any other public data network.

1. **Rights Granted**

1.1 **PriceGrabber Grant**. Subject to the terms and conditions of this Agreement, PriceGrabber hereby grants on a non-exclusive, non-transferable basis to Company the right and license to include on the Company Web Sites PriceGrabber-branded and other prominent links (whether in graphical, text or other format) which enable "point and click" access to locations of the PriceGrabber Web Sites (and/or the Co-branded Pages) specified by PriceGrabber (and subject to change by PriceGrabber from time to time).

Company and its Affiliates shall have no right to reproduce or sub-license, re-sell or otherwise distribute all or any portion of the Content to any third party, or to modify Content without the express written consent of PriceGrabber.

1.2 **Exclusivity**. Company agrees that its relationship with PriceGrabber related to online comparison shopping for the Company Web Site, as defined above, is exclusive in favor of PriceGrabber (whether or not involving co-branding), and Company agrees not to develop, or enter into other agreements or relationships for services and content that are similar in nature to those provided by PriceGrabber, throughout the Term (as defined in Section 8.1).

2. **Certain Obligations of the Parties**

2.1 The parties will mutually agree on the extent of the Content to be contained on the Co-branded Pages. Pursuant to this arrangement, PriceGrabber agrees to make available to Company for the term of the Agreement a real-time XML feed (the "API") in order for Company to use, host, reproduce and display the Content on the Company Web Sites as more generally described in PriceGrabber's API Specifications Document (attached as Appendix A). Company agrees that PriceGrabber may revise the API Specifications Document from time-to-time during the Term in its sole discretion, and PriceGrabber will provide Company with a copy of any such revised document.

2.2 PriceGrabber hereby grants Company a non-exclusive, non-transferable, limited, worldwide right and license to access the API, and use host, reproduce and display the Content solely on the Company Web Sites. Company agrees that it shall not under any circumstances provide any portion of the Content to any third party in any form (e.g., stand-alone product, file, database) or otherwise sell, rent, transfer or distribute any portion of the Content to third parties other than as set forth in this Agreement.

30/03/2009  18:49   +49-00-0000000000                                          S.    03/14

PriceGrabber.com                                                                  Page 3

**2.3**   Company will be provided with a partner ID and a key that will provide access to the API.  Company agrees to maintain the confidentiality of the partner ID and the key at all times, keeping this information in a secure environment and will only disclose the partner ID and key to such employees on a need-to-know basis.  In the event that Company suspects that the partner ID and key has been or will be misused due to any act or omission of Company, it shall immediately inform PriceGrabber of this fact in order for PriceGrabber to take the appropriate action. Company shall be responsible for any such misuse(s).  In the event that Company transfers the partner ID to any party other than its own employees on a need-to-know basis without the express written permission of PriceGrabber, such act shall constitute a breach of Company's confidentiality obligations under the Agreement.

**2.4**   Unless otherwise instructed by PriceGrabber, Company agrees not to modify any Content other than formatting changes consistent with respect to Company's integration of the Content on the Company Web Sites.  Specifically, in response to User enquiries on the Co-branded Pages, Company agrees to: (a) include all applicable Merchants in a specific API response that are provided to Company; (b)  maintain the ordering of Merchants on each of the Co-branded Pages as provided in the API; (c) maintain all product descriptions, prices and ratings as provided in the API; (d) maintain the Featured Merchant attribution and placement as provided in the API; and (e) include, and not modify, the logos (including logo size) and Trademarks of Merchants as provided in the API.

**2.5**   Company acknowledges that certain of the Content is provided to PriceGrabber by third parties under a contractual arrangement.  Accordingly, Company agrees to remove any and all Content from the Co-branded Pages immediately upon written request by PriceGrabber.  In the event that a Merchant requests a change to Content with respect to an offer by such Merchant due to an error and such Merchant communicates this request directly to the Company, Company shall forward such request to PriceGrabber in writing, and PriceGrabber will make reasonable commercial efforts to implement such change without delay and in an efficient manner.

**2.6**   Company acknowledges that there may be occasions when PriceGrabber has a good faith belief that Company's integration of the Content on the Co-branded Pages negatively impacts Merchant relationships or is not maximizing revenues for the parties.  In such an event, and on a case-by-case basis, PriceGrabber shall inform Company in writing of the issue or issues and provide instructions on how to rectify the problem.  In such case, Company agrees to implement PriceGrabber's instructions without delay and in an efficient manner.

**2.7**   Company agrees to include any and all PriceGrabber content provider and licensor copyright and content attribution notices on the Co-branded Pages.  These copyright and attribution notices will be provided in the API.  Specifically, Company shall include the phrase "Powered by PriceGrabber" in a mutually agreed upon position between the parties and which shall be linkable to www.PriceGrabber.com (the "PriceGrabber Attribution").  The PriceGrabber Attribution shall be visible to search engine spiders as specified by PriceGrabber.

**2.8**   After each API query, Company shall place on each generated page a Link Back to the URL provided by PriceGrabber.  Said URL shall be visible to search engine spiders as specified by PriceGrabber.

**2.9**   The Co-branded Pages and any Content therein shall be governed by PriceGrabber's Terms of Use and Privacy Policy and, to the extent relevant with respect to the PriceGrabber services being offered by Company, its Member Agreement.

**2.10**  Company shall not issue any publicity or general marketing communications concerning PriceGrabber or its relationship with Company without the prior written consent of the other PriceGrabber, which consent shall not be unreasonably withheld or delayed.

**2.11**  Company shall maintain PriceGrabber's Click-thru Conversion Rate standards as provided herein.  Company shall in each month of the Term attain a Click-thru Conversion Rate of no less than 2% ("Target Conversion Rate").  In the event that Company fails to attain the Target Conversion Rate for two (2) consecutive calendar months, PriceGrabber shall have the right to terminate this Agreement upon ten (10) days written notice.

EXHIBIT A
10

30/03/2009  18:49  +49-00-0000000000                                                S.     04/14

PriceGrabber.com                                                                            Page 4

**3.    Company Technical Obligations**

3.1    Company shall maintain 99.99% uptime on the Co-Branded Pages on a monthly basis.

3.2    Critical errors, as determined by PriceGrabber in its sole reasonable discretion, shall be corrected by Company within forty-eight (48) hours of receipt of the relevant notification from PriceGrabber. Company will use reasonable commercial efforts to correct other errors within two (2) business days.

3.3    User search requests involving the Content should be responded to in real time as Users browse the site.

3.4    Company shall ensure that API requests are reflective of User activity on the Company sites. Company shall refrain from batch use (eg. downloading catalogs and offers for entire categories unrelated to specific User requests).

3.5    Company shall work with PriceGrabber to come up with mutually agreed upon standards for caching the Content or any information obtained through the API.

3.6    Company shall make reasonable effort to prevent third parties from spidering their site, or prevent calls to the API on the basis of spidering.

**4.    Revenue Sharing**

**Click-thru Revenues.**

a.     PriceGrabber shall be responsible for revenue sales, service, invoicing and collection. Company shall not in any way be responsible for activities relating to sales and collection of revenues from Merchants.

b.    PriceGrabber shall pay Company on tiered revenue schedule per calendar month as follows:

b.1   During the first month of the initial Term of the Agreement, the tiered revenue schedule per calendar month shall be:

(i) If Gross Revenues generated by Click-thrus are less than $125,000 (one hundred twenty-five thousand dollars), PriceGrabber shall pay Company sixty-five percent (65%) of Adjusted Gross Revenue.
(ii) If Gross Revenues generated by Click-thrus are greater than or equal to $125,000 (one hundred twenty-five thousand dollars) but less than $212,500 (two hundred twelve thousand five hundred dollars), PriceGrabber shall pay Company seventy-five percent (75%) of Adjusted Gross Revenue.
(iii) If Gross Revenues generated by Click-thrus are greater than or equal to $212,500 (two hundred twelve thousand five hundred dollars), the definition of Adjusted Gross Revenue shall mean Gross Revenue less seven and one-half percent (7.5%) for bad debt, credit card fees, taxes (excluding income tax) and co-branding, hosting, and bandwidth costs. If Gross Revenues generated by Click-thrus are greater than or equal to $212,500 (two hundred twelve thousand five hundred dollars), PriceGrabber shall pay Company eighty two and one-half percent (82.5%) of Adjusted Gross Revenue.

b.2   During the second month of the initial Term of the Agreement, the tiered revenue schedule per calendar month shall be:

(i) If Gross Revenues generated by Click-thrus are less than $175,000 (one hundred seventy-five thousand dollars), PriceGrabber shall pay Company sixty-five percent (65%) of Adjusted Gross Revenue.
(ii) If Gross Revenues generated by Click-thrus are greater than or equal to $175,000 (one hundred seventy-five thousand dollars) but less than $297,500 (two hundred ninety-seven thousand five hundred dollars), PriceGrabber shall pay Company seventy-five percent (75%) of Adjusted Gross Revenue.

Co-Brand Agreement                              Confidential

EXHIBIT A
11

(iii) If Gross Revenues generated by Click-thrus are greater than or equal to $297,500 (two hundred ninety-seven thousand five hundred dollars), the definition of Adjusted Gross Revenue shall mean Gross Revenue less seven and one-half percent (7.5%) for bad debt, credit card fees, taxes (excluding income tax) and co-branding, hosting, and bandwidth costs. If Gross Revenues generated by Click-thrus are greater than or equal to $297,500 (two hundred ninety-seven thousand five hundred dollars), PriceGrabber shall pay Company eighty two and one-half percent (82.5%) of Adjusted Gross Revenue.

b.3  For the remainder of the Term and all subsequent Terms, the tiered revenue schedule per calendar month shall be:

(i) If Gross Revenues generated by Click-thrus are less than $250,000 (two hundred fifty thousand dollars), PriceGrabber shall pay to Company sixty-five percent (65%) of Adjusted Gross Revenue.
(ii) If Gross Revenues generated by Click-thrus are greater than or equal to $250,000 (two hundred fifty thousand dollars) but less than $425,000 (four hundred twenty-five thousand dollars), PriceGrabber shall pay Company seventy-five percent (75%) of Adjusted Gross Revenue.
(iii) If Gross Revenues generated by Click-thrus are greater than or equal to $425,000 (four hundred twenty-five thousand dollars), the definition of Adjusted Gross Revenue shall mean Gross Revenue less seven and one-half percent (7.5%) for bad debt, credit card fees, taxes (excluding income tax) and co-branding, hosting, and bandwidth costs. If Gross Revenues generated by Click-thrus are greater than or equal to $425,000 (four hundred twenty-five thousand dollars), PriceGrabber shall pay Company eighty two and one-half percent (82.5%) of Adjusted Gross Revenue.

**4.2   Revenue Payments.**  Payments due from PriceGrabber to Company hereunder will be reconciled and paid within forty-five (45) days following the calendar month in which the applicable revenues are generated by PriceGrabber. However, and notwithstanding anything to the contrary in this Agreement, PriceGrabber shall only make a payment to Company where the accumulated amount due to Company by PriceGrabber under the terms of this Agreement exceeds One Hundred Dollars ($100), and PriceGrabber shall make such payment within forty-five (45) days following the month in which such minimum threshold is reached. The foregoing shall not release PriceGrabber from paying any and all amounts due to Company (i.e., whether or not the sum due exceeds One Hundred Dollars ($100)) upon the expiration or earlier termination of this Agreement in accordance with Section 6. Other than as explicitly stated in Section 4.1(b), PriceGrabber shall have no obligation to share with, allow Company to sell, or account to Company regarding, any sums received by PriceGrabber or any of its Affiliates from any advertisements or promotions on any of the PriceGrabber Web Sites. All payments due hereunder shall be paid by PriceGrabber in US Dollars.

**4.3   Taxes.**  The payments required to be made under this Agreement do not include any amount for taxes, duties or levies (including interest and penalties).

EXHIBIT A
12

**5.    Warranties, Indemnification and Limitation of Liability**

**5.1    Warranties.**

a.    Each party to this Agreement represents and warrants respectively that: (i) it has the full corporate right and authority to enter into this Agreement and to perform the acts and obligations required of it hereunder; (ii) its execution of this Agreement and performance of its obligations hereunder, do not and will not violate any agreement to which it is a party or by which it is bound; (iii) in performance under and related to this Agreement, the parties shall comply with all applicable laws, rules and regulations (including, without limitation, privacy, export control and obscenity laws); and (iv) when executed and delivered, this Agreement will constitute the legal, valid and binding obligation of such party, enforceable against it in accordance with its terms.

b.    Company warrants that it will exercise its best efforts to ensure that the Company Web Sites and the content contained thereon will not contain any material that is obscene, pornographic, profane, fraudulent, libelous or defamatory, or infringing of any Intellectual Property Rights or other rights of any third party. Company shall also refrain from displaying content, advertising, or links to the Web Sites of any online comparison shopping Entity that competes directly or indirectly with PriceGrabber. If Company is notified or otherwise becomes aware of any content on the Company Web Sites that violates this paragraph, it will take immediate steps to remove such material.

c.    Company represents and warrants that it is not now, and will not during the term of this Agreement be, owned (in whole or in part), employed by, affiliated with or be an agent of, any online comparison shopping Entity that reasonably could be construed to be a direct competitor of PriceGrabber. If there is any issue about who might be a direct competitor of PriceGrabber, Company will defer to PriceGrabber to resolve such issue in the latter's reasonable discretion.

d.    Company represents and warrants that its responses to the API Questionnaire attached as Appendix B are truthful and accurate representations of its intended use of the API.

**5.2    Indemnification.** Each party (the "Indemnifying Party") will defend, indemnify and hold harmless the other party (the "Indemnified Party"), and the respective directors, officers, employees and agents of the Indemnified Party, from and against any and all claims, costs, losses, damages, judgments and expenses (including reasonable attorneys' fees) arising out of or in connection with any third-party claim resulting, in whole or in part, from any breach by the Indemnifying Party of this Agreement. The Indemnified Party agrees that the Indemnifying Party shall have sole and exclusive control over the defense and settlement of any such third party claim. However, the Indemnifying Party shall not acquiesce in any judgment or enter into any settlement that adversely affects the Indemnified Party's rights or interests without prior written consent of the Indemnified Party.  The Indemnified Party shall promptly notify the Indemnifying Party of any such claim of which it becomes aware and shall: (a) at the Indemnifying Party's expense, provide reasonable cooperation to the Indemnifying Party in connection with the defense or settlement of any such claim; and (b) at the Indemnified Party's expense, be entitled to participate in the defense of any such claim.

**5.3    Limitation of Liability and Disclaimer.**

a.    **Liability.** TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, WITH THE EXCEPTION OF ANY ACTS OR OMISSIONS OF WILFUL MISCONDUCT, UNDER NO CIRCUMSTANCES SHALL EITHER PARTY AND/OR THEIR REPRESENTATIVES BE LIABLE TO THE OTHER PARTY FOR INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL OR EXEMPLARY DAMAGES (EVEN IF THAT PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES), ARISING FROM ANY PROVISION OF THIS AGREEMENT SUCH AS, BUT NOT LIMITED TO, LOSS OF REVENUE OR ANTICIPATED PROFITS OR LOST BUSINESS (IN EACH CASE TO THE EXTENT INDIRECT), WHETHER BASED ON BREACH OF CONTRACT, BREACH OF WARRANTY, TORT (INCLUDING NEGLIGENCE), PRODUCT LIABILITY OR OTHERWISE, EVEN IF PRICEGRABBER, THIRD PARTY PROVIDER, OR THEIR REPRESENTATIVES, HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, AND EVEN IF A REMEDY SET FORTH HEREIN IS FOUND TO HAVE FAILED OF ITS ESSENTIAL PURPOSE. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, UNDER NO CIRCUMSTANCES SHALL ANY THIRD PARTY BE LIABLE TO COMPANY FOR ANY DIRECT, INDIRECT, INCIDENTAL,

30/03/2009   18:49   +49-00-0000000000                                              S.      07/14

CONSEQUENTIAL, SPECIAL OR EXEMPLARY DAMAGES (EVEN IF COMPANY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES) ARISING FROM SUCH THIRD PARTY'S CONTENT MADE AVAILABLE TO COMPANY UNDER THIS AGREEMENT. PRICEGRABBER'S AGGREGATE LIABILITY TO COMPANY HEREUNDER (WHETHER ARISING IN TORT, CONTRACT OR OTHERWISE AND NOTWITHSTANDING ANY FAULT, NEGLIGENCE (WHETHER ACTIVE, PASSIVE OR IMPUTED), PRODUCT LIABILITY OR STRICT LIABILITY OF PRICEGRABBER) UNDER THIS AGREEMENT OR WITH REGARD TO ANY OF THE PRODUCTS, SOFTWARE, WEB SITES AND ANY OTHER ITEMS OR SERVICES RENDERED BY PRICEGRABBER UNDER THIS AGREEMENT (INCLUDING ANY SERVERS OR OTHER HARDWARE, SOFTWARE AND ANY OTHER ITEMS USED OR PROVIDED BY PRICEGRABBER OR ANY THIRD PARTIES IN CONNECTION WITH HOSTING THE CO-BRANDED PAGES), SHALL NOT EXCEED THE COMPENSATION RECEIVED BY COMPANY FROM PRICEGRABBER HEREUNDER.

b.    **No Additional Warranties.**  EXCEPT AS SET FORTH IN THIS AGREEMENT, NEITHER PARTY MAKES, AND EACH PARTY HEREBY SPECIFICALLY DISCLAIMS TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, ANY REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED (INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR NON-INFRINGEMENT, AND IMPLIED WARRANTIES ARISING FROM COURSE OF DEALING OR COURSE OF PERFORMANCE), AND EACH PARTY HEREBY SPECIFICALLY DISCLAIMS ANY CLAIM IN TORT (INCLUDING NEGLIGENCE), IN EACH CASE, REGARDING ITS OWN WEB SITES OR THOSE OF ITS AFFILIATES, ANY PRODUCTS OR SERVICES DESCRIBED THEREON, OR ANY OTHER ITEMS, SOFTWARE OR SERVICES PROVIDED UNDER THIS AGREEMENT AND ACCESS TO AND USE OF THE CONTENT PROVIDED BY RELATED MATERIALS AND SERVICES. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, COMPANY ACKNOWLEDGES THAT THE PRICEGRABBER WEB SITES AND THE CONTENT (INCLUDING ANY SERVERS OR OTHER HARDWARE, SOFTWARE AND ANY OTHER ITEMS USED OR PROVIDED BY PRICEGRABBER OR ANY THIRD PARTIES IN CONNECTION WITH HOSTING THE PRICEGRABBER WEB SITES, INCLUDING WITHOUT LIMITATION, THE CO-BRANDED PAGES, OR THE CONTENT OR PERFORMANCE OF ANY SERVICES HEREUNDER) ARE PROVIDED "AS IS" WITHOUT ANY WARRANTIES OF ANY KIND. COMPANY ACKNOWLEDGES THAT PRICEGRABBER MAKES NO WARRANTY THAT IT WILL CONTINUE TO OPERATE ITS WEB SITES OR OFFER THE CONTENT IN THEIR CURRENT FORM, THAT ITS WEB SITES OR THE CONTENT WILL BE ACCESSIBLE WITHOUT INTERRUPTION, THAT THE WEB SITES OR THE CONTENT WILL MEET THE REQUIREMENTS OR EXPECTATIONS OF THE OTHER PARTY, OR THAT THE CONTENT, SOFTWARE OR ANY OTHER MATERIALS ON ITS WEB SITES OR THE SERVERS AND SOFTWARE THAT MAKES ITS WEB SITES AVAILABLE ARE FREE FROM ERRORS, DEFECTS, DESIGN FLAWS OR OMISSIONS OR ARE COMPLETELY SECURE.

**8.    Term and Termination**

**8.1    Term.**  The term of this Agreement shall commence on the Effective Date and, unless earlier terminated or extended as provided below, shall end thirty-six (36) months later ("Term"); provided that this Agreement shall be automatically renewed for successive one year periods unless either party provides written notice of termination to the other party at least thirty (30) days prior to the end of the then-current Term.

**8.2    Termination.**  Either party may terminate the Agreement upon not less than fourteen (14) days' prior written notice to the other party of any material breach hereof by such other party, provided that such other party has not cured such material breach within such fourteen (14) day period. Upon termination or expiration of this Agreement for any reason, all rights and obligations of the parties under this Agreement shall be extinguished, except that all accrued payment obligations hereunder shall survive such termination or expiration; and the respective rights and obligations of the parties under Sections 4.1, 4.2, 4.3, 5.1, 5.2, 5.3, 6.2, 7, 8.1, 6.3, 8.4 through 8.6 and 8.11 shall survive such termination or expiration. Company shall destroy and delete any and all Content in any form provided by PriceGrabber to Company or owned by PriceGrabber that are in the possession of Company within two days of the termination of this Agreement.

**6.3    Immediate Termination.**  PriceGrabber reserves the right to immediately terminate this Agreement if Company fails to comply with Section 2.3 or 2.4 or materially changes the content of Company Web Sites in a way that causes it to conflict with any provision of this Agreement.

30/03/2009   18:49   +49-00-0000000000                                    S.      08/14

PriceGrabber.com

## 7.    Intellectual Property

**7.1   Company.** As between the parties, Company retains all right, title and interest in and to the Company Web Sites (including, without limitation, any and all content, data, URLs, domain names, technology, software, code, user interfaces, "look and feel" and other items posted thereon or used in connection or associated therewith; but excluding any Content or other items supplied by PriceGrabber) and the Company Trademarks along with all Intellectual Property Rights associated with any of the foregoing. All goodwill arising out of PriceGrabber's use of any of the Company Trademarks shall inure solely to the benefit of Company.

**7.2   PriceGrabber.** As between the parties, PriceGrabber retains all right, title and interest in and to the Content, and the PriceGrabber Web Sites (including, without limitation, any and all content, data, URLs, domain names, technology, software, code, user interfaces and "look and feel,"), the PriceGrabber Trademarks (including but not limited to: PriceGrabber, PriceGrabber.com, MyPriceGrabber, Powered By PriceGrabber or Powered by PriceGrabber.com, PriceGrabber Logo, Comparison Shopping Beyond Compare and The Smart Place To Start Your Shopping) and other items posted thereon or used in connection or associated therewith; but excluding any items supplied by Company which are its undisputed intellectual property), and the PriceGrabber Trademarks, along with all Intellectual Property Rights associated with any of the foregoing. Specifically, any and all information collected on the PriceGrabber Web Sites is the sole and exclusive property of PriceGrabber, and may not be used, saved, altered, copied, or retrieved by electronic means (including but not limited to spiders, crawlers and bots) or distributed in any way, for any purpose, without the express written permission of PriceGrabber. All goodwill arising out of Company's use of any of the PriceGrabber Trademarks shall inure solely to the benefit of PriceGrabber.

EXHIBIT A
15

30/03/2009   18:49   +49-00-0000000000                                                    S.      09/14

**7.3   Third Party Intellectual Property.**  Company shall not acquire any right, title or interest in or to any Intellectual Property Rights (i) in any Content provided or made available by or through PriceGrabber or (ii) any Content belonging to or provided by a third party, including, but not limited to, all related software, technology, information, content, materials, guidelines, and documentation.

**8.   General Provisions**

**8.1   Confidentiality.**  Each party (the "Receiving Party") undertakes to retain in confidence the terms of this Agreement and all other non-public information and know-how of the other party disclosed to or acquired by the Receiving Party pursuant to or in connection with this Agreement which is either designated as proprietary and/or confidential or by the nature of the circumstances surrounding disclosure, ought in good faith to be treated as proprietary and/or confidential ("Confidential Information"); provided that each party may disclose the terms and conditions of this Agreement to its legal and financial advisors in the ordinary course of its business.  Each party agrees to use commercially reasonable efforts to protect Confidential Information of the other party, and in any event, to take precautions at least as great as those taken to protect its own confidential information of a similar nature.  Company acknowledges that the terms of this Agreement are Confidential Information of PriceGrabber and agrees that it shall not disclose any of the terms of this Agreement to any third party other than its outside counsel, auditors and advisers without obtaining PriceGrabber's prior express written authorization.  The foregoing restrictions shall not apply to any information that: (a) was known by the Receiving Party prior to disclosure thereof by the other party; (b) was in or entered the public domain through no fault of the Receiving Party; (c) is disclosed to the Receiving Party by a third party legally entitled to make such disclosure without violation of any obligation of confidentiality; (d) is required to be disclosed by applicable laws or regulations (but in such event, only to the extent required to be disclosed and only after written notification to the other party and affording the other party the opportunity to seek a protective order to protect its Confidential Information); or (e) is independently developed by the Receiving Party without reference to any Confidential Information of the other party.  Upon request of the other party, or in any event upon any termination or expiration of this Agreement, each Receiving Party shall return to the other all materials, in any medium, which contain, embody, reflect or reference all or any part of any Confidential Information of the other party.  Each party acknowledges that breach of this provision by it would result in irreparable harm to the other party, for which money damages would be an insufficient remedy, and therefore that the other party shall be entitled to seek injunctive relief to enforce the provisions of this Section.

**8.2   Independent Contractors.**  Company and PriceGrabber are independent contractors under this Agreement, and nothing herein shall be construed to create a partnership, joint venture, franchise or agency relationship between Company and PriceGrabber.  Neither party has any authority to enter into agreements of any kind on behalf of the other party.

**8.3   Assignment.**  This Agreement will be binding upon, enforceable by and inure to the benefit of the parties and their respective successors and assigns, except that Company may not assign this Agreement or any of its rights or delegate any of its duties under this Agreement without the prior written consent of PriceGrabber unless such assignment or delegation is to a purchaser of all or substantially all of Company's assets or to any successor of Company by way of merger, consolidation or similar transaction in each case to the extent that such purchaser or successor is not a competitor of PriceGrabber (being an Entity (or any one of its Affiliates) that offers online comparison shopping services and/or content for products and/or services).

**8.4   Governing Law.**  This Agreement shall be governed by, and construed in accordance with, the laws of the State of California, excluding its provisions on conflicts of laws.

**8.5   Choice of Venue.**  The parties hereby submit to the jurisdiction of, and waive any venue objection to, the United States District Court for the Central District of California and the Superior Courts located in Los Angeles County, California, in any litigation arising out of this Agreement.

**8.6   Attorney fees and Court Costs.**  The prevailing party in any legal action brought by one party against the other and arising out of this Agreement shall be entitled, in addition to any other rights and remedies it may have, to reimbursement for its expenses, including court costs and reasonable attorneys' fees.

EXHIBIT A

16

30/03/2009  18:49   +49-00-0000000000                                                       S.    10/14

---

PriceGrabber.com                                                                                   Page 10

**8.7    Non-waiver.** No waiver of any breach of any provision of this Agreement shall constitute a waiver of any prior, concurrent or subsequent breach of the same or any other provisions hereof, and no waiver shall be effective unless made in writing and signed by an authorized representative of the waiving party.

**8.8    Force Majeure.** Neither party shall be deemed to be in default of or to have breached any provision of this Agreement as a result of any delay, failure in performance or interruption of service, resulting directly or indirectly from acts of God, acts of civil or military authorities, civil disturbances, wars, strikes or other labor disputes, fires, transportation contingencies, interruptions in telecommunications or Internet services or network provider services, failure of equipment and/or software, other catastrophes or any other occurrences which are beyond such party's reasonable control.

**8.9    Changes in Agreement.** In the event PriceGrabber determines that this Agreement requires modification, Company shall be notified in writing of any such changes and shall have the right to cancel this Agreement within ten (10) days' notice of any change that Company deems unacceptable.  Failure to cancel within the said period shall constitute acceptance of the new terms by Company.

**8.10   Ethical Conduct.**  Company shall not directly or indirectly generate, induce or cause false Click-thrus (Click-thrus not generated by legitimate and customary Users actually interested in comparison shopping or purchasing a product) whether mechanically (through bots and automated software) or manually (through any Entity).   Breach of this obligation by Company shall entitle PriceGrabber to terminate this Agreement immediately.

**8.11   Notices.**  Any notice or other communication required or permitted to be given hereunder shall be given in writing and delivered in person, sent via confirmed facsimile or e-mail, or delivered by recognized courier service, properly addressed, to the individual and/or department and addresses of the respective parties set forth below and shall be deemed effective upon receipt.  Notice given by facsimile or email (details for each party set forth below) shall be confirmed promptly by a copy sent by either first class mail, postage prepaid, return receipt requested, or by courier.  Either party may from time to time change the individual to receive notices or its address by giving the other party notice of the change in accordance with this section.   Each party's respective addresses and other details for notices are as follows:

PriceGrabber.com Inc.
5150 Goldleaf Circle, 2nd Floor
Los Angeles CA 90056
Fax: (323) 601-1678
Attention: Contracts
e-mail: contracts@pricegrabber.com

Unister GmbH
barfußgäßchen n 11
04109 Leipzig, Germany
Fax: 49 341 492 88 96
e-mail: verena.freese@unister-gmbh.de

**8.12   Severability.**  In the event any provision of this Agreement shall for any reason determined or held to be invalid, illegal or unenforceable in any respect, the remaining provisions shall remain in full force and effect.  If any provision of this Agreement shall, for any reason, be determined by a court of competent jurisdiction to be excessively broad or unreasonable as to scope or subject, such provision shall be enforced to the extent necessary to be reasonable under the circumstances and consistent with applicable law while reflecting as closely as possible the intent of the parties as expressed herein.

**8.13   Entire Agreement.** This Agreement contains the entire understanding of the parties hereto with respect to the transactions and matters contemplated hereby, supersedes all previous agreements or negotiations between PriceGrabber and Company concerning the subject matter hereof, and cannot be amended except as provided in Section 8.9 hereof or by a writing signed by both parties. This Agreement does not constitute an offer by PriceGrabber and it shall not be effective until signed by both parties.

---

Co-Brand Agreement                                    **Confidential**

EXHIBIT A
17

PriceGrabber.com                                                                        Page 11

**8.14  Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original, and all of which together constitute one and the same instrument. The parties acknowledge and agree that facsimile copies of the Agreement will be equivalent to original documents.

**IN WITNESS WHEREOF**, the parties have duly executed and delivered this Agreement as of the Effective Date.

| Unister GmbH ("Company") | PriceGrabber.com Inc. ("PriceGrabber") |
|---|---|
| By (signature) | By (signature) |
| Name          Rudiger Biebl | Name          Michael Wilson |
| Title          Director of Business Development | Title          VP Business Development |

Co-Brand Agreement                          Confidential

30/03/2009  18:49   +49-00-0000000000                                    S.    12/14

PriceGrabber.com                                                         Page 12

## Appendix A:
## API Specifications Document

### Appendix B:
### API Questionnaire

1) What is the PriceGrabber API going to be used for?  (Examples: search for products and link to hosted co-brand, get prices for products the prospective partner has in their database, integrate with prospective partner's content such as reviews, build own shopping site, etc)

- Search for products
- Get prices for products
- Get price comparisons
- Get product ratings, reviews etc.
- Use complete Filtering
- Build own shopping site
- Category Browsing

2) What is the URL of the domain is it going to be used on?

- www.cheap-hit.com

3) What are all the different types of pages that we include API content?  Provide complete list of example URLs.

- http://www.best-price.com/
- http://www.best-price.com/category/index/id/11000000
- http://www.best-price.com/category/offers/id/11000000
- http://www.best-price.com/product/index/id/760140314/name/JVC_LT-42P789_42_in__1080p_LCD_HDTV
- http://www.best-price.com/product/offers/sid/802025473/title/JVC_LT-42P789_42_in__1080p_LCD_HDTV
- http://www.best-price.com/product/offers/sid/802025473/title/JVC_LT-42P789_42_in__1080p_LCD_HDTV
- http://www.best-price.com/product/datasheet/id/760140314/name/JVC_LT-42P789_42_in__1080p_LCD_HDTV
- http://www.best-price.com/report/listReports/id/760140314/name/JVC_LT-42P789_42_in__1080p_LCD_HDTV
-

4) What IPs are the requests going to be coming from and what geographical location?

- 72.232.75.2
- 72.232.75.5
- 72.232.75.6
- 72.232.75.7

Co-Brand Agreement
**Confidential**

EXHIBIT A
20

PriceGrabber.com                                                              Page 14

- 72.232.75.8
- 72.232.75.10
- 72.232.75.11
- 72.232.75.12
- 72.232.75.13

5) What is the anticipated number of requests per day (average and peak)?

- Short term we anticipate appr. 300,000 requests per day.

6) What is the anticipated go live date?

- 01.05.2009

EXHIBIT A
21

26/05/2009  20:55   +49-00-0000000000                                              S.     01/01

## Amendment to Co-brand Agreement

**WHEREAS** Unister GmbH ("Company") and PriceGrabber.com Inc. are parties to the Co-brand Agreement executed March 23, 2009 (the "Agreement").

**NOW, THEREFORE**, the parties desire to modify said Agreement as set forth in this Amendment to the Agreement ("Amendment"), effective as of May 26, 2009 ("Amendment Effective Date"). This Amendment is fully incorporated into and made a part of the Agreement. Unless otherwise specified herein, capitalized terms shall have the meanings assigned to them in the Agreement. As of the Amendment Effective Date, any references to the Agreement shall be deemed to refer to the Agreement as amended hereby. In consideration of the mutual promises and covenants contained herein and in the Agreement, and for other good and valuable consideration the sufficiency of which is hereby acknowledged by both parties hereto, the parties agree to amend and modify the Agreement as hereinafter set forth:

1.     Definitions.

The Definition "**Company Web Sites**" is hereby replaced in its entirety by the following:

> "*Company Web Sites*" *means the following Web Sites:* http://www.cheap-hit.com *and* http://www.best-price.com.

The modifications to the Agreement contemplated by this Amendment shall be in full force and effect immediately upon signing by both parties. The modifications stated herein are the only changes to the Agreement and all other terms and conditions of this Agreement shall remain unchanged.

IN WITNESS WHEREOF, the parties have duly executed and delivered this Agreement as of the Amendment Date.

PriceGrabber.com Inc.                           Unister GmbH

Signature                                        Signature

Name  *Michael Wilson*                           Name

Title  *VP Business Development*                 Title

Amend020303

EXHIBIT A
22

**PROOF OF SERVICE**

I, Fay Lum-Lee, declare:

I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 555 South Flower Street, 50th Floor, Los Angeles, California 90071-2300. On April 13, 2012, I caused to be served a copy of the documents listed below:

**THIRD AMENDED COMPLAINT FOR BREACH OF CONTRACT; DEMAND FOR JURY TRIAL**

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

☒ by placing the document(s) listed above in a sealed Fedex envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Fedex agent for next day delivery.

☐ by causing to be personally delivered via First Courier Service the document(s) listed above to the person(s) at the address(es) set forth below.

☐ by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

David R. Shaub, Esq.
Lisbeth Bosshart Merrill, Esq.
Shaub & Williams LLP
12121 Wilshire Boulevard, Suite 205
Los Angeles, CA 90025

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service

LAI-3157057v1

1  is presumed invalid if postal cancellation date or postage meter date is more than

2  one (1) day after date of deposit for mailing in affidavit.

3       I declare that I am employed in the office of a member of the Bar of this

4  Court at whose direction the service was made.

5       Executed on April 13, 2012, at Los Angeles, California.

6

7                                   Fay Lum-Lee

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAI-3157057v1